### 11577. HINES, director-general, *v.* LITTLE.

1. Under the law of this State, a servant assumes the ordinary risks incident to the nature and character of his employment, and is bound to exercise his own skill and diligence to protect himself, and if injury results from the negligence of the master in failing to comply with the duties imposed upon him, it must appear that the master knew or ought to have known of the risk to which the servant was thus unjustifiably exposed, and that the servant did not know, did not have equal means of knowing, and by the exercise of ordinary care could not have known of the danger to which he was thus subjected.

2. Despite the ordinary assumption of risk on the part of the servant, it is incumbent upon the master to exercise ordinary care and diligence in providing reasonably safe appliances and a reasonably safe place in which the servant is to perform his work, with the well-recognized qualification that the rule as to furnishing a safe place to work does not have application where the work itself is of such a nature as to con-

stantly change the conditions and degree of safety; and if the servant is injured when engaged in a character of work to which the unsafe conditions thus are or become incidental, the master is not liable on account of his mere failure to provide a safe place to work, but in such a case the ordinary rule of the assumption of risk on the part of the servant would apply.

3. The doctrine known as the "assumption of skill" on the part of the master sometimes makes the knowledge implied against the master relative to the safety of the place of work, and the nature, constituents, and general characteristics of the things used in the business, superior to that implied against the servant, especially where the servant is inexperienced in the work in which he is engaged. Thus, in determining whether the danger to which the servant was exposed was such as must be taken to have been assumed, and in determining whether the servant is chargeable with knowledge of the existence of danger resulting from the failure on the part of the master to supply a reasonably safe place and appliances, the fact that the injury was brought about by compliance on the part of the servant with a direct command given by one representing the master may properly be considered, unless the danger is obvious; for the reason that the servant is ordinarily bound to obey the command of his master when given as such, if it pertains to the duties of the servant's employment and does not involve a violation of the law, and the act required is not one which is of itself so obviously dangerous that no person of ordinary prudence could be expected to perform it. *Burton* v. *Wadley Southern Ry. Co.*, 25 *Ga. App.* 380 (103 S. E. 881).

4. Under the facts of this case the judge did not err in refusing to grant a nonsuit. The evidence does not necessarily show that the risk resulting in the plaintiff's injury was assumed, since the injury was not occasioned by a risk naturally resulting from and incident to the changing character of the work in unloading the cars, nor was the danger to which he became subjected in complying with the master's command of such a nature as an inexperienced workman must have necessarily observed by the exercise of what, under the circumstances, amounted to ordinary care. It was properly left for the jury to say whether or not the "standards" on the side of the car opposite to which the load was expected to fall were of insufficient strength to withstand the stress to which they would be reasonably subjected; and if so, whether the plaintiff failed in his own duty to exercise what, under the circumstances, amounted to ordinary care in ascertaining such fact before complying with the command of the master.

Decided January 20, 1921.

Action for damages; from Wilkinson superior court — Judge Park. April 10, 1920.

*A. R. Lawton, Jr.,* for plaintiff in error.

*George H. Carswell, J. F. Bloodworth,* contra.

Jenkins, P. J. The plaintiff was a railway employee who at the time of his injury was engaged in unloading piles from flat cars.

The piles were held in place by wooden upright standards on each side of the car. These standards, opposite to one another, were bound together by wires stretched across the car. The unloading was effected by cutting the standards on one side of the car partly in two, and then cutting the wires, so that the weight of the piles forced against the partially cut standards would cause them to roll off upon the ground on that side of the car. At the time of the injury the plaintiff and other laborers, under the supervision of one who may be taken as a representative of the master; had cut the standards on the side of the car on which the piles were intended to fall, and some of the wires. The plaintiff then, standing on the edge of the car on the side opposite to the cut standards, with one arm around a standard, cut with an axe the wires attached to the uncut standard. This standard, and other standards on the plaintiff's side of the car where the standards were not intended to fall, then broke; the plaintiff fell backward down an embankment, and piles rolled upon him, causing serious injuries, for which he brought suit. The petition in effect charged negligence on the part of the railway company, on account of its failure to provide standards of sufficient strength to withstand the weight of the piles on the side of the car where the standards and load were not intended to fall; that the railway company knew of such defect and the resulting danger, which the plaintiff did not know, had not equal means of knowing, and by ordinary care could not have known; that the injury resulted from such act of negligence, while plaintiff was engaged in complying with the orders of the representative of the master; and there were other grounds of neg-ligence, not urged here.

. The plaintiff's evidence was, that he began the work in which he was injured "in January," and was injured on January 9; " that was the first piles I helped unload;" that while the foreman in charge of the unloading did not direct the cutting of the particular wire which immediately preceded the injury, he "directed me to cut that wire, . . was present when this happened, and gave directions as to how to unload the car, and as to the cutting of the wires and the cutting of the standards," and that he "gave instructions about cutting the wire on the other side; and when I cut the wire, I was following his directions." The defendant offered no testimony, but at the conclusion of the plaintiff's evi-

dence moved for a nonsuit, which the court refused. A verdict and judgment were rendered for the plaintiff, from which, on a general assignment of error, the defendant came to this court, assigning error (with specific grounds) on the ruling of the trial court overruling its motion for nonsuit, and alleging that such ruling, had it been rendered as claimed by the defendant, "would have been a final determination of this cause." See, in this connection: *Rice* v. *Ware, 3 Ga. App.* 573 (60 S. E. 801); *Ocean Steamship Co.* v. *McDuffie, 6 Ga. App.* 671 (65 S. E. 703). It is not necessary to add anything further to what is said in the headnotes.

*Judgment affirmed. Stephens and Hill, JJ., concur.*